**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EDUARDO ERNESTO ORTIZ-CASTILLO, | Case No. 2:23-cv-01485-RFB-MDC |
| Petitioner, | **ORDER** |
| v. | |
| THE UNITED STATES OF AMERICA, et al., | |
| Respondents. | |

On September 22, 2023, Petitioner Eduardo Ernesto Ortiz-Castillo filed a petition for federal habeas corpus relief under 28 U.S.C. § 2241, challenging his prolonged detention without a fair bond hearing pending the Ninth Circuit Court of Appeals' decision on his removal. (ECF Nos. 1-1, 7.) This Court conducted a preliminary review of the petition and directed that the petition be served on the Respondents. (ECF No. 6.) Following a request for an extension, the Respondents timely responded. (ECF No. 12.) Due to the procedural changes in this case since the petition was filed—namely, the Board of Immigration Appeals' affirmation of the Immigration Judge's denial of Ortiz-Castillo's request for release on bond (ECF No. 12-3 at 3–4)—this Court ordered Ortiz-Castillo to file a reply within 14 days. (ECF No. 13.) Ortiz-Castillo timely complied, filing his reply on February 20, 2024. (ECF No. 14.)

This Court has jurisdiction over the petition. See 28 U.S.C. § 2241(c)(3) (providing that federal district courts may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States"); see also Demore v. Kim,

538 U.S. 510, 516–17 (2003) (determining that the federal courts have jurisdiction to grant relief to noncitizens challenging their detention). For the reasons discussed below, the petition is granted.

## I.        BACKGROUND

Ortiz-Castillo is a citizen of El Salvador. On August 19, 2021, the Department of Homeland Security issued a notice to appear, alleging that Ortiz-Castillo arrived in the United States on June 7, 2021, without a valid entry document. On that basis, the Department of Homeland Security charged Ortiz-Castillo with removal from the United States. On February 14, 2022, an Immigration Judge ("IJ") denied Ortiz-Castillo's requests for asylum, withholding of removal under the Immigration and Nationality Act, withholding of removal under the Convention Against Torture, and deferral of removal under the Convention Against Torture. The IJ ordered Ortiz-Castillo removed to El Salvador. Ortiz-Castillo appealed the IJ's decision, and the Board of Immigration Appeals dismissed the appeal on July 13, 2022. Ortiz-Castillo filed a petition for review with the United States Court of Appeals for the Ninth Circuit.

While awaiting the Court of Appeals' decision, Ortiz-Castillo requested release on bond, and on August 29, 2023, the IJ conduct a custody redetermination hearing. The IJ denied Ortiz-Castillo's request, finding that it lacked jurisdiction. The IJ explained that Ortiz-Castillo is subject to mandatory detention as an arriving noncitizen, and, as such, he is ineligible for release on bond. Ortiz-Castillo appealed, and on December 21, 2023, the Board of Immigration Appeals dismissed Ortiz-Castillo's appeal, finding that Ortiz-Castillo "has not identified any jurisdictional authority that would permit the Immigration Judge to review the terms of his custody status."

On January 24, 2024, the Court of Appeals denied Ortiz-Castillo's petition and motion to stay removal.[1] On February 5, 2024, Ortiz-Castillo petitioned for panel rehearing and rehearing *en banc* and filed a supplemental motion to stay removal. The Court of Appeals has not ruled on Ortiz-Castillo's petitions or his supplemental motion.[2]

## II.    DISCUSSION

### A.    Governing law

Title 8 of the United States Code section 1225 provides the framework for the detention of certain arriving noncitizens. Applicants for admission fall into one of two categories: (1) subsection 1225(b)(1), which applies to noncitizens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation, and (2) subsection 1225(b)(2), which serves as a catchall provision that applies to all applicants for admission not covered by subsection 1225(b)(1). Both subsections authorize the detention of noncitizens seeking admission into the country: (1) subsection 1225(b)(1)(B)(iii)(IV) provides that "[a]ny alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed," and (2) subsection 1225(b)(2)(A) grants the government authority to detain an arriving noncitizen pending the completion of removal

---

[1] This Court takes judicial notice of the online docket records of the Court of Appeals in case number 22-1218, <u>Eduardo Ernesto Ortiz Castillo v. Merrick B. Garland</u>.

[2] The Court of Appeals' January 24, 2024, order is not final until the mandate issues. <u>See</u> Fed. R. App. P. 41(c), 1998 Adv. Comm. Note ("A court of appeals' judgment or order is not final under issuance of the mandate."). The Court of Appeals has yet to issue its mandate, so Ortiz-Castillo's removal period has not yet started. <u>See</u> 8 U.S.C. § 1231(a)(1)(B)(ii) (explaining that the removal period starts on "the date of the court's final order"). As such, at the time of the filing of the petition and the time of this order, Ortiz-Castillo is not subject to detention under 8 U.S.C. § 1231, which provides that detention of a noncitizen is mandatory during the removal period.

1   proceedings, when "the examining immigration officer determines that a [noncitizen] seeking

2   admission is not clearly and beyond a doubt entitled to be admitted."

3   In Jennings v. Rodriguez, the United States Supreme Court held that detention under

4   subsection 1225(b)(1) and subsection 1225(b)(2) is mandated until the removal proceedings have

5   concluded, noting that (1) "nothing in the statutory text [of 8 U.S.C. § 1225(b)] imposes any limit

6   on the length of detention," and (2) nothing in the statutory text of 8 U.S.C. § 1225(b) "says

7   anything whatsoever about bond hearings." 583 U.S. 281, 297 (2018). However, regarding due

8   process considerations regarding the lack of a bond hearing, the Supreme Court remanded the case

9   to the Court of Appeals "to consider [the] constitutional arguments on their merits." Id. at 312.

10   The Court of Appeals, in turn, remanded the case to the district court to consider the constitutional

11   arguments in the first instance, but it noted that it had "grave doubts that any statute that allows

12   for arbitrary prolonged detention without any process is constitutional or that those who founded

13   our democracy precisely to protect against the government's arbitrary deprivation of liberty would

14   have thought so." Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018). Following these

15   remands, there is a deficiency of guidance regarding the point at which a noncitizen's continued

16   mandatory detention without a fair bond hearing becomes unconstitutional. See Rodriguez Diaz v.

17   Garland, 53 F.4th 1189, 1201 (9th Cir. 2022) (explaining that "after the Supreme Court's decision[

18   ] in Jennings . . . , it remains undetermined whether the Due Process Clause requires additional

19   bond procedures under *any* immigration detention statute" (emphasis in original)).

20   In the absence of clear guidance from a higher court, district courts in this circuit have

21   taken various approaches to determine whether due process requires a bond hearing in a particular

22   case. See Lopez v. Garland, 631 F. Supp. 3d 870, 877–78 (E.D. Cal. 2022) (discussing various

23   approaches). Among them is the test established in Mathews v. Eldridge, a case in which the

Supreme Court recognized that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." 424 U.S. 319, 333 (1976) (internal quotation marks omitted). <u>Mathews</u> lays out a three-part test to determine whether a claimant has been provided constitutionally adequate due process. <u>Id.</u> at 334–35. Recognizing that "due process is flexible and calls for such procedural protections as the particular situation demands," a court must consider: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." <u>Id.</u> (internal quotation marks omitted). Because the Court of Appeals for the Ninth Circuit has applied <u>Mathews</u> to due process challenges to continued immigration detention without a bond hearing, <u>see Rodriguez Diaz</u>, 53 F.4th at 1206–07, this Court applies the <u>Mathews</u> framework here to determine whether Ortiz-Castillo's mandatory detainment under subsection 1225(b) without a bond hearing implicates due process concerns. <u>See De Leon v. Mayorkas</u>, 2:23-cv-02073-GMN-VCF, 2024 WL 343437 (D. Nev. Jan. 29, 2024) (determining "that <u>Mathews</u> provides the best framework for determining whether a § 1226(c) detainee's continued mandatory detention without a bond hearing implicates due process concerns").

**B.   Analysis**

The holding in <u>Jennings</u> forecloses any claim that Ortiz-Castillo's continued detention violates the federal immigration statutes. The only question is whether his continued detention without a bond hearing violates the right to due process. <u>See Hussain v. Rosen</u>, 985 F.3d 634, 642

1   (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation

2   proceedings."). This Court turns to the <u>Mathews</u> test to answer that question.[3]

3       Regarding the first <u>Mathews</u> factor, Ortiz-Castillo's private interest in being free from

4   prolonged detention is clearly substantial. He has been detained for two years and eight months.

5   <u>See</u> <u>Rodriquez Diaz</u>, 53 F.4th at 1207 ("We have held . . . that an individual's private interest in

6   'freedom from prolonged detention' is 'unquestionably substantial.'") (quoting <u>Singh v. Holder</u>,

7   638 F.3d 1196, 1208 (9th Cir. 2011)). This fact is minimally diminished by the fact that Ortiz-

8   Castillo's detention beyond the IJ's February 14, 2022, decision was due to his decision to

9   challenge the removal order before the BIA and Court of Appeals. <u>See id</u>, 53 F.4th at 1207 ("We

10  also cannot overlook that most of the period of [Petitioner]'s detention arose from the fact that he

11  chose to challenge before the BIA and later [the Court of Appeals] the IJ's denial of immigration

12  relief."). However, as Ortiz-Castillo rebuts, he "has brought legitimate collateral challenges to his

13  removal order" and has made "use of the statutorily permitted appeals process." The Court finds

14  this factor weighs in Ortiz-Castillo's favor.

15      Turning to the second <u>Mathews</u> factor, the Fifth Amendment's Due Process Clause

16  requires the government to prove a detainee's flight risk or dangerousness by clear and convincing

17  evidence to justify continued detention. Ortiz-Castillo admits that he was arrested and accused of

18  extortion in February 2010 in El Salvador. Importantly, however, Ortiz-Castillo was acquitted of

19  those charges. There is no other information pertaining to Ortiz-Castillo being a flight risk or a

20

21  _____

    [3] Respondents argue that Ortiz-Castillo received a bond hearing less than six months ago, so there

22  can be no denial of Ortiz-Castillo's constitutional right to due process. (ECF No. 12 at 5–6.) This
    argument is not convincing. As noted above, the decision was a summary denial based on a finding

23  that the IJ lacked jurisdiction to make a custody redetermination. Because the IJ did not consider
    whether Ortiz-Castillo posed a danger to the community or was flight risk, the Court finds that the
    IJ did not provide Ortiz-Castillo with an opportunity to be heard in a meaningful manner, which is
    a fundamental requirement of due process.

danger to community. Contrarily, Ortiz-Castillo explains that his "mother, wife, son and daughter were released [following being taken into custody at the border] and are living in Virginia." As such, absent any evidence in the current record to the contrary, this Court cannot assume that an IJ would deny Ortiz-Castillo's request for release or bail. Thus, the Court finds this factor also weighs—at least mildly—in Ortiz-Castillo's favor.

Turning to the final <u>Mathews</u> factor, the Supreme Court has held that, when the <u>Mathews</u> test is applied, "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." <u>Landon v. Plasencia</u>, 459 U.S. 21, 34 (1982). On one hand, this Court appreciates the government's weighty interest in efficient administration of the immigration laws at the border and ensuring the presence of noncitizens at their removal proceedings. On the other hand, the fiscal and administrative burden of holding a bond hearing is minimal. Accordingly, this Court finds that this factor is neutral.

In sum, weighing the three <u>Mathews</u> factors in light of the current record, the Court concludes that Ortiz-Castillo's prolonged mandatory detention pending removal proceedings without a bond hearing is unreasonable.

## III.    CONCLUSION

**IT IS THEREFORE ORDERED** that Petitioner Eduardo Ernesto Ortiz-Castillo's petition for federal habeas corpus relief under 28 U.S.C. § 2241 (ECF No. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that within 30 days of the date of this order, Respondents shall provide Ortiz-Castillo with an individualized bond hearing before an immigration judge.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter judgment accordingly and close this case.

**Dated:** February 23, 2024

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT COURT**